IN RE: DANIEL RAY SUTTON, *An Infant, Etc.*

(No. 10102)

Submitted April 19, 1949. Decided June 7, 1949.

*Ira P. Baer,* for appellants.

*Ira J. Partlow,* Attorney General, *Clay S. Crouse, Norman Knapp,* for appellees.

RILEY, JUDGE:

This writ of error was granted to an order of the Circuit Court of Raleigh County, refusing a writ of error to a judgment of the juvenile court of that county, in which the prayer of the parents of David Ray Sutton was denied and their petition dismissed. The proceeding originated on the petition filed July 10, 1947, of Frank Wright and Audine Sutton Wright, an infant, by Frank Wright, her next friend, the parents of Daniel Ray Sutton, an infant, against E. W. Worrell, agent for the department of public assistance, and others, praying that a certain judgment of November 7, 1946, entered in the Juvenile Court of Raleigh County in a prior *ex parte* proceeding instituted by

the department of public assistance, involving the custody of said infant, be set aside and held for naught, and that petitioners be restored to their full legal, parental and con- ' stitutional rights to said child. The answer was based on the theory that the department of public assistance had acquired such control as would permit it to put the child out for adoption.

The child, Daniel Ray Sutton, was born out of wedlock on August 26, 1945, in a hospital at Durham, North Carolina, and shortly thereafter was transferred by the department of Public Assistance of that State to the Department of Public Assistance of West Virginia at Huntington, West Virginia. The petitioners, the father and mother, both residents of Beckley, Raleigh County, were married on December 10, 1945. Prior to and at the time of the birth of the child the father was overseas with the armed services. On September 23, 1946, the mother signed a statement purporting to relinquish all rights, including that of putting the child out for adoption, to the department of public assistance, and on November 7, 1946, Ava Holmes, child welfare worker for the department of public assistance, division of child welfare, without notice to the parents, filed a petition, hereinafter referred to as the "department's petition", purportedly under Chapter 73, Article 6, Section 1, Acts of the Legislature, 1941, before the Juvenile Court of Raleigh County, alleging that the mother was unable to provide adequate care and supervision for her child; that she had signed a statement relinquishing her rights to the child to the department; and that Daniel Ray Sutton was a dependent and neglected child within the meaning of the statute; and prayed that the department be authorized to take such child into its custody and guardianship, with power to consent to his adoption. Upon the foregoing petition, the court entered the judgment of November 7, 1946, sought to be set aside in the instant proceeding; which order purports to grant the authority prayed for.

The petition in the instant proceeding alleges, in effect, that Frank Wright, the child's father, upon his return to Beckley, was married on December 10, 1945, to Audine Sutton, the mother of his child; that petitioners had no home of their own until June, 1947; that the paper purporting to relinquish the rights of the mother to the child was signed by the mother without the father's knowledge; that the child was not illegitimate at the time of the execution of the purported relinquishment; that the father had not relinquished his parental rights; that no notice of the proceedings before the juvenile court was given to petitioners, though they were in Raleigh County and well known to the agents of the department of public assistance; that actual care of the child was in the department at the time of its petition; that upon learning of the entry of the order of November 7, 1946, the petitioners retained counsel for the purpose of securing their full parental rights in this child; that the department being informed of petitioners' intention insisted that there was no necessity for the action contemplated, and returned the child to its parents a few days prior to December 24, 1946, the date of the birth of a second child to petitioners; and that since the department "relinquished the actual physical custody of Daniel Ray Sutton to [petitioners], there has been a complete change of circumstances in their lives and their family status; that another child has been born to them, and * * * petitioner, Frank Wright, has regular employment, and your petitioners have acquired and now reside in their own home." The petition further alleges that "Daniel Ray Sutton is not now a dependent and neglected child", and "that his full legal restoration to his family of mother and father and sister is for his best welfare and interest."

As set out in the department's petition to the juvenile court in the prior proceeding, and as disclosed by the judgment therein, Daniel Ray Sutton was a dependent and neglected child at the time of the signing by his mother of the purported statement of relinquishment. The instant record discloses that a second child, a girl, was born to

the petitioners on December 24, 1946; that in May, 1947, petitioners had purchased a house of their own; and that the father was gainfully employed and able properly to care for the two children, Daniel Ray Sutton and the little daughter.

Although the parents on July 10, 1947, the date of the filing of their petition, had the actual physical custody of Daniel Ray Sutton, the department of public assistance still claims the right of supervision by virtue of the alleged statement of relinquishment of September 23, 1946, and the court order of November 7, 1946, purporting to give the department the right to guardianship of the child, with power to consent to his adoption. This order, according to the department, seems to be relied upon as an approval of the relinquishment. With this position we do not agree. There is nothing in the petition or order indicating the fact, well known to the department, that the mother was a minor, notwithstanding Chapter 19, Article 3, Section 1, Acts of the Legislature, 1945, expressly provides: "That if either of the parents of such child is under twenty-one years of age, such relinquishment shall not be valid unless and until the same shall have been approved in writing by a judge of a juvenile court of the county in which such parent may reside or in which such relinquishment is made."

The purported relinquishment was not acknowledged in the manner in which deeds are required to be acknowledged by law, and, therefore, it was not sufficient of itself to base an adoption. Chapter 19, Article 3, Section 1, Acts of the Legislature, 1945. See also *Bell v. Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627. And, further, it is invalid for the reason that it was not approved in writing by the judge of the juvenile court, as required by statute.

The marriage of the petitioners legitimatized their child born out of wedlock. Code, 42-1-6. Hence, at the time of the execution of the statement by the mother and the order of the juvenile court, both the father and mother of the

child were necessary parties to any proceeding regarding the relinquishment of the custody and the guardianship of the child.

The custody on November 7, 1946, was not with the department of public assistance, as contended by it. True, the child had been, and was being, held by the department at the time of the hearing before the juvenile court, but the legal custody was still in the parents. The department had not taken any of the steps provided by statute either to gain custody or complete guardianship of the child. It apparently took the erroneous position that the statement of relinquishment, signed by the mother, gave it the custody of the child. The parents, having the legal custody of the child at the time of the filing of the petition by the department on November 7, 1946, were entitled to notice under the provisions of Chapter 73, Article 6, Section 2, Acts of the Legislature, 1941.

Inasmuch as the record discloses that both parents were within the jurisdiction of the court, and that the welfare agency had knowledge of the marriage of the parents and the fact that the father recognized the child as his, we are of opinion that notice should have been given to the parents of the presentation of the petition to the juvenile court seeking the custody of the child on the ground that it was at the time a dependent and neglected child within the meaning of the statute. A parent, in our opinion, cannot be divested of parental rights without notice and opportunity for hearing. So far as the record discloses, they were definitely within the jurisdiction of the court. So, in the circumstances of this case, the order of the juvenile court of November 7, 1946, was void and of no effect.

Since the custody of the child is with the parents, and the department of public assistance has no authority by virtue of the purported statement of relinquishment or the judgment of the juvenile court of November 7, 1946, we are of opinion to reverse the judgment of the Juvenile

Court of Raleigh County of January 16, 1948, and direct that the parents' petition be reinstated, and that the complete custody and guardianship of the child be declared to be in its parents.

*Judgment reversed;*
*petition reinstated;*
*parental rights restored.*